UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

MICHAEL BROWDER,                                )
                                                )
            Plaintiff,                           )
                                                )
                                                )        Civil Action No. 1:24-CV-11588-AK
v.                                               )
                                                )
BISOLA OJIKUTU,                                 )
CITY OF BOSTON,                                 )
TAMMY PUST,                                     )
BOSTON FIREFIGHTERS LOCAL 718                   )
INTERNATIONAL ASSOCIATION OF                    )
FIRE FIGHTERS AFL-CIO,                          )
JOHN SOARES,                                    )
                                                )
            Defendants.                          )
_____)

**MEMORANDUM AND ORDER ON
DEFENDANT OJIKUTU'S MOTION TO DISMISS**

ANGEL KELLEY, D.J.

        Plaintiff Michael Browder ("Plaintiff" or "Browder") has sued Defendant Dr. Bisola

Ojikutu ("Defendant Ojikutu"), in her individual and official capacities, alleging violations of

substantive and procedural due process, free exercise under the First Amendment, and equal

protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  [Dkt. 1].  Plaintiff

has also sued Tammy Pust, the City of Boston, Boston Firefighters Local 718 International

Association of Fire Fighters AFL-CIO, and John Soares.  Defendant Ojikutu moves to dismiss all

claims against her, arguing that Browder's claims are barred by qualified immunity, that

Browder has not alleged sufficient facts to plausibly entitle him to any relief, and that Browder

has not alleged any conduct of hers that caused him harm.  [Dkt. 24] ("Defendant Ojikutu's

1

Motion to Dismiss"). Plaintiff opposes Defendant Ojikutu's Motion, arguing that Defendant Ojikutu acted as a cabinet-level agent of the City of Boston, causing Plaintiff harm. [Dkt. 25] ("Opposition to Defendant Ojikutu's Motion to Dismiss"). For the following reasons, Defendant Ojikutu's Motion to Dismiss [Dkt. 24] is **GRANTED**.

## I.    BACKGROUND

### A.  General Facts

Unless otherwise noted, the facts are presented as alleged in the Complaint. [Dkt. 1]. Plaintiff is a member of the Nation of Islam ("NOI"). Plaintiff "believes that biochemical tests, vaccines, and other countermeasures against contagious disease are sinful because they seek protection from affliction in something other than God." [Dkt. 1 at ¶ 50]. In 2007, Plaintiff joined the City of Boston Fire Department as a firefighter. For 19 months during the height of the COVID-19 pandemic, Plaintiff completed the COVID-19 Employee Mandatory Self-Monitoring Checklist. On August 12, 2021, Defendant City of Boston instituted the Vaccine Verification or Required Testing for COVID-19 policy ("Vaccine or Test Policy").

On September 27, 2021, Plaintiff submitted a request for religious exemption from both vaccination and testing to the City of Boston Office of Human Resources ("HR"). Plaintiff alleges that he asserted his religious exemption to the policy due to his sincerely held religious beliefs. In October 2021, Defendant Tammy Pust was appointed as the Director of the City of Boston Office of Labor Relations. On October 7, 2021, Plaintiff Browder requested an update on his religious exemption request, at which point the Defendant City of Boston asked him to fill out a religious accommodation form, which Plaintiff did. Plaintiff alleges that he received no updates regarding his religious accommodation request for the following two weeks. On October 25, 2021, Plaintiff Browder received an email before the close of business from a

director of HR at City of Boston Fire Department noting he is not in compliance with the Vaccine or Test Policy and informing him that if he does not come in compliance by the close of business of that day, he would be placed on unpaid administrative leave at the start of his work shift on Tuesday, October 26, 2021.  On October 27, 2021, Plaintiff Browder was relieved of his duties and placed on unpaid administrative leave.

On October 28, 2021, Defendant Pust reached out to Browder to set up a meeting to discuss his pending religious accommodation request.  Plaintiff requested that the communication occur in writing and Defendant Pust provided him with a "Reasonable Accommodation Interactive Dialogue Questions" form.  Plaintiff filled out and returned the form on October 28, 2021.  On October 29, 2021, Plaintiff was notified by one of the City of Boston's HR directors that his religious accommodation request was denied.  Specifically, the accommodation for the vaccine component of the policy was denied since the vaccine was not mandatory.  The accommodation for the test component of the policy was denied on undue hardship grounds.

On December 20, 2021, Plaintiff alleges that Defendant City of Boston instituted a Mandatory Vaccine Policy based on Defendant Ojikutu's advice.  The Mandatory Vaccine Policy, however, never went into effect.  On May 11, 2023, the Vaccine or Test Policy ended. On May 24, 2023, Defendant City of Boston requested that Plaintiff return to work by May 31, 2023 and noted that Plaintiff was not entitled to any backpay due to his lack of compliance with the Vaccine or Test Policy.  Plaintiff Browder responded to Defendant City of Boston noting, "it is the Department and the City's duty to address the discriminatory and retaliatory behavior that [he] ha[s] endured and to find a just resolution to this situation."  On June 28, 2023, the City of Boston Fire Department's deputy chief of personnel ordered Plaintiff to report to him on July 12,

2023 to discuss his work status and return to duty.  Plaintiff did not return to work and alleges

that he had considered himself constructively discharged upon being placed on indefinite unpaid

administrative leave.  On September 29, 2023, the City of Boston Fire Department's deputy chief

of personnel notified Plaintiff that he was no longer employed by the City of Boston due to being

on an unauthorized absence since July 12, 2023.

### B.  Facts Specific to Defendant Ojikutu

Defendant Ojikutu became Executive Director of the Boston Public Health Commission

("BPHC") on September 1, 2021.  [Dkt. 1 at ¶ 54].  Plaintiff alleges that, "on information and

belief" Defendant Ojikutu had the authority to grant or deny religious accommodation requests

to the Vaccine or Test Policy and that her decisions were based on the advice of the City of

Boston's Director of Labor Relations, Defendant Pust, who interviewed employees seeking these

accommodations.  [Dkt. 1 at ¶ 87].  Plaintiff further alleges that Defendant Ojikutu and

Defendant City of Boston denied religious accommodation requests if they were based on

"conspiracy beliefs" or "medical mistrust" as defined by Defendant Ojikutu in her research

publications.  [Dkt. 1 at ¶¶ 86-88].

Plaintiff brought this suit on June 19, 2024.  Plaintiff brings five claims against

Defendant Ojikutu: violation of substantive due process under the Fourteenth Amendment

pursuant to 42 U.S.C. § 1983 (Count I), violation of Massachusetts substantive due process

pursuant to Mass. Gen. Laws. ch. 12, sec. 11I (Count II), violation of free exercise under the

First Amendment pursuant to 42 U.S.C. § 1983 (Count III), violation of equal protection

(disparate treatment and impact based on race) under the Fourteenth Amendment pursuant to 42

U.S.C. § 1983 (Count IV), and violation of procedural due process pursuant to 42 U.S.C. § 1983

(Count IX).  Plaintiff specifically argues that Defendant Ojikutu is motivated by a professional

interest in combating vaccine hesitancy, medical mistrust, and certain sincerely held beliefs among Black Americans, which Defendant Ojikutu has disparaged as "conspiracy beliefs" or "conspiracy theories." [Dkt. 1 at ¶ 245]. As a result, Plaintiff argues that Defendant Ojikutu, along with the other Defendants, deprived Plaintiff of his fundamental right to refuse medical treatment, deprived him of his free exercise of religion right, subjected him to disparate treatment and impact based on race, and deprived him of proper notice and an opportunity to be heard.

Defendant Ojikutu filed a Motion to Dismiss on October 15, 2024. [Dkt. 24]. Defendant Ojikutu moves to dismiss all five of Plaintiff's claims against her pursuant to Federal Rules of Civil Procedure (Fed. R. Civ. P.) 12(b)(1) and (6). Defendant Ojikutu specifically argues that Plaintiff lacks standing, Plaintiff has not alleged sufficient facts to plausibly entitle him to relief, and Plaintiff's claims are barred by qualified immunity.

## II.    LEGAL STANDARD

### A.  12(b)(1) Motion

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995). A district court must consider a motion to dismiss under 12(b)(1) first because it has different consequences than a 12(b)(6) dismissal. One significant consequence is that "dismissal under [12(b)(1)], not being on the merits, is without res judicata effect." Id. Plaintiff has the burden of establishing this Court has subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Faced with a 12(b)(1) challenge, this "court is permitted to look beyond the pleadings to determine jurisdiction on a 12(b)(1) motion[.]" Katz v. Pershing, LLC, 806 F. Supp. 2d 452, 456 (D. Mass.

2011), aff'd, 672 F.3d 64 (1st Cir. 2012).

Article III courts have the authority to only listen to actual cases and controversies involving the legal rights of litigants who have a "personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 204 (1962); U.S. CONST. art. III, § 2, cl. 1.  To show such a personal stake, otherwise known as standing, a plaintiff must establish 1) an "injury in fact", 2) a "causal connection between the injury and the conduct complained of" and 3) a likelihood "that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560.  If a defendant raises a sufficiency challenge, the Court will assess the sufficiency of the plaintiff's jurisdictional allegations by "credit[ing] the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw[ing] all reasonable inferences from them in [plaintiff's] favor, and dispos[ing] of the challenge accordingly." Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  If, however, the defendant raises a factual challenge "by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts," then "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the Court will consider the allegations by both parties and resolve the factual disputes." Id.

**B.  12(b)(6) Motion**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the complaint to

distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  If the facts alleged "are sufficient to state a cause of action, [the] motion to dismiss must be denied."  Back Beach Neighbors Comm. v. Town of Rockport, 535 F. Supp. 3d 57, 62 (D. Mass. 2021).

## III.    DISCUSSION

Defendant advances several arguments in her Motion to Dismiss.  The Court considers only three of her arguments.  First, Defendant argues that Plaintiff lacks standing under Federal Rule of Procedure 12(b)(1) to bring the instant Complaint against her.  Second, Defendant argues that the Plaintiff fails to state a claim under Federal Rule of Procedure 12(b)(6).  Lastly, Defendant argues she is entitled to invoke the doctrine of qualified immunity.  The Court addresses each of these three arguments in turn.

### A.  12(b)(1)

Because subject matter jurisdiction is a threshold issue, this Court must first address whether Plaintiff's claims should be dismissed for lack of Article III standing.  Wilkins v. Genzyme Corp., 93 F.4th 33, 39 (1st Cir. 2024) (considering Article III and subject matter issues as threshold matters before turning to any merit arguments).  To establish standing, the Supreme Court has provided three elements a plaintiff must establish: "1) an 'injury in fact', 2) a causal connection between that injury and the challenged conduct and 3) a likelihood that the injury will

be redressed by a favorable decision of this Court." <u>Beaudoin v. Baker</u>, 530 F. Supp. 3d 169, 173 (D. Mass. 2021) (quoting <u>Lujan</u>, 504 U.S. at 560-561).

Attacks on subject matter jurisdiction come in two varieties—a facial challenge and a factual challenge. <u>Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.</u>, 4 F.4th 63, 69 (1st Cir. 2021) (citing <u>Torres-Negrón v. J & N Records, LLC</u>, 504 F.3d 151, 162 (1st Cir. 2007)). A facial attack challenges the sufficiency of the pleading itself, while a factual attack challenges the factual basis for jurisdiction. <u>Cebollero-Bertran</u>, 4 F.4th at 69. Defendant does not expressly state which challenge she is launching against the Plaintiff. However, she recites the standard for the latter variety. Thus, the Court will examine Defendant's argument under a factual challenge.[1]

### 1. Injury and Redressability

A plaintiff bears the burden to establish that his injury is "concrete, particularized, and actual or imminent[.]" <u>Blum v. Holder</u>, 744 F.3d 790, 796 (1st Cir. 2014). Plaintiff has met this burden. Plaintiff's denial of his religious accommodation request and his placement on unpaid administrative leave upon his noncompliance with the Vaccine or Test Policy are sufficiently pleaded in the Complaint as his injuries. Plaintiff has also established redressability as there is "a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury[.]" <u>Duke Power Co. v. Carolina Environmental Study Group, Inc.</u>, 438 U.S. 59, 79 (1978).

---

[1] The Court finds that Defendant implicitly, albeit weakly, also made a facial challenge that causation is insufficiently pled. When a defendant makes a facial challenge, the relevant facts are the well-pleaded allegations in the complaint, which this Court must take as true. <u>Toddle Inn Franchising, LLC v. KPJ Assocs., LLC</u>, 8 F.4th 56, 61 n.5 (1st Cir. 2021). Where a 12(b)(1) motion, as here, challenges the sufficiency (rather than the accuracy) of the complaint's jurisdictional facts, the standard of review is the same as the Rule 12(b)(6) standard. <u>See Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.</u>, 4 F.4th 63, 69 (1st Cir. 2021) (stating that the analysis for a 12(b)(1) facial challenge "is essentially the same" as a 12(b)(6) analysis). Thus, the Court will discuss whether Plaintiff sufficiently pleaded causation under 12(b)(6) below.

### 2. Causation

The more difficult element of this Article III analysis is causation.  The crux of Defendant Ojikutu's argument is that Plaintiff has not sufficiently alleged that there is a traceable connection between the injury and the challenged conduct.  In other words, Defendant Ojikutu argues that Plaintiff has not sufficiently alleged causation.  This Court agrees.  The causation element "requires a showing that the injury is fairly traceable to the defendant's conduct and not the result of 'the independent action of some third party not before the court.'"  Beaudoin, 530 F. Supp. 3d at 175 (quoting Lujan, 504 U.S. at 560-561) (internal citation omitted).

As mentioned before, for a factual challenge to Article III standing, the Court has the authority to "consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations" when faced with a Rule 12(b)(1) motion.  Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000).  The Court believes it is necessary to consult this extrinsic evidence since the Defendant's 12(b)(1) motion advances a factual challenge that calls into question Plaintiff's jurisdictional allegations.  Plaintiff's claims against the Defendant rests on three distinct allegations: (1) that, on information and belief, Defendant had the authority to grant or deny religious accommodation requests; (2) that Defendant's research is evidence of her racially or religiously discriminatory intent; and (3) that the City of Boston's Mandatory Vaccine Policy was based on Defendant's medical advice.

### a)  Authority

Defendant Ojikutu points to the Boston Public Health Commission's enabling statute, to clarify her role:

> The commissioner shall administer the laws relative to health . . . and shall prepare rules and regulations for the

9

consideration of the council.

. . . The council shall make and promulgate rules and regulations, take evidence in appeals, consider plans and appointments required by law, hold hearings, and discharge other duties required by law; but it shall have no administrative or executive functions.

See MASS. GEN. LAWS ch. 111, §§ 2-3.

Defendant Ojikutu contends that, as the BPHC statute indicates, she was not involved with the City's decisions with regard to employee compliance with the Vaccine or Test Policy. Additionally, she contends that she plays no role in deciding employee religious accommodation requests. [Dkt. 24 at 5]. Thus, according to Defendant Ojikutu, she had no part in Plaintiff's alleged injury. Plaintiff, on the other hand, opposes this argument, but does not allege any specific conduct on the part of Defendant Ojikutu that caused him harm and infringed on his right to refuse medical treatment. Plaintiff simply asserts a conclusory statement that Defendant Ojikutu denied him the religious accommodation request.

However, Plaintiff's own allegations refute this. As the Complaint claims, it was a city human resources director—not Defendant Ojikutu—that denied his religious accommodation request. [Dkt. 1 at ¶ 105] ("On October 29, 2021, another City human resources director sent Mr. Browder a denial of his requested accommodation to be exempted from both of the two components of the Vaccine or Test Policy."). Plaintiff's religious accommodation request form was also submitted directly to the City's human resources team, and there is no indication that this form was provided to or reviewed by Defendant Ojikutu. [Dkt. 29-2]. Additionally, regarding his religious accommodation request and placement on unpaid administrative leave, Plaintiff communicated only with the Defendant City of Boston, its employees, and Defendant Boston Firefighters Local 718. [Dkt. 38-3]. Similarly, there is no indication that Defendant Ojikutu was privy to or a part of any of these communications. [Id.].

This is further supported by the City of Boston Policy itself, which directs all accommodation requests for the Vaccine or Test Policy to be submitted to the Office of Human Resources ("OHR").  [Dkts. 24-2; 24-3].  Employees who failed to comply with the policy requirements were notified that they would have a hearing with the Office of Labor Relations.  [Id.].  Again, Defendant Ojikutu is not affiliated with any of these organizations, as per the statute and her affidavit.  [Dkt. 24-4; MASS. GEN. LAWS ch. 111, §§ 2-3].

### b)  Research

Plaintiff attempts to bolster his position by pointing to Defendant Ojikutu's research on medical mistrust and vaccine hesitancy, alleging that this research motivated her to deny his religious accommodation request.  Plaintiff argues, in particular, that Defendant Ojikutu's research clearly shows that she believes Black Americans, as distinct from all other citizens, to be particularly susceptible to "medical misinformation," and that her belief in these "stereotypes" caused her to deny his request to be exempted from the Vaccine or Test Policy.  [Dkt. 25].  The Court fails to see how Defendant's research had any impact on—let alone could be the cause of—his religious accommodation denial.  The primary research the Plaintiff relies on was published after his religious accommodation request was denied.[2]  Moreover, the Defendant's previous, independent research cannot be the source of animus as it was under a different agency, at a different time, and for a different purpose.  In other words, it had nothing to do with her role as BPHC Commissioner.

Plaintiff attempts to argue that Defendant Ojikutu's research is evidence of her

---

[2] See Laura M. Bogart et al., *COVID-19 Vaccine Intentions and Mistrust in a National Sample of Black Americans*, 113 J. NAT'L MED ASS'N 599, no. 6, (2022); Lu Dong et al., *A Qualitative Study of COVID-19 Vaccine Intentions and Mistrust in Black Americans: Recommendations for Vaccine Dissemination and Uptake*, PLOS ONE (May 3, 2022), https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0268020.  The first article was published in January of 2022 and the second article was published in May of 2022, both after Plaintiff was placed on unpaid administrative leave.

discriminatory intent and seeks to hold her liable under his disparate treatment and impact claim

based on race. "Direct evidence of discrimination is defined as evidence 'which, in and of itself,

shows a discriminatory animus.'" Mandavilli v. Maldonado, 38 F. Supp. 2d 180, 192 (D.P.R.

1999) (citing Jackson v. Harvard University, 900 F.2d 464, 467 (1st Cir. 1990)). The Court does

not find that Defendant Ojikutu's research qualifies as direct evidence that indicates a

discriminatory animus towards Plaintiff, or others, who share his race or religion. In fact, the

Court finds that Defendant Ojikutu's scholarship appears to address vaccine mistrust among

Black Americans to promote health equity.

       As stated above, Defendant Ojikutu's research provides insight into why COVID-19

vaccination rates are low among Black Americans and elaborates on strategies to provide care

that is culturally competent. Defendant further elaborates in her research on the need to

acknowledge systemic racism as a cause of medical mistrust in the Black American community

and the importance of using transparent messaging techniques. Contrary to Plaintiff's assertion,

Defendant's research aims to *prevent* race-based discrimination in health, not create it. The

contention that Defendant's research was the primary force of the religious accommodation

denial is, at best, too attenuated, and at worst, nonsensical.[3]

### c) Medical Advice

       Plaintiff also alleges that Defendant Ojikutu is liable for the various claims against her

because the Mandatory Vaccine Policy was based on her medical advice. This allegation

squarely falters. The Mandatory Vaccine Policy was never enforced due to litigation. See [Dkt.

---

[3] As Defendant asserted during the motion hearing, were the Court to even entertain Plaintiff's argument, it could
effectively impose a chilling effect on research initiatives. See Application of Am. Tobacco Co., 880 F.2d 1520,
1524 (2d Cir. 1989) ("It would have the effect of denying to these doctors the opportunity of first publication of their
studies. It could also have a chilling effect and discourage future scientific endeavors."); see also In re Snyder, 115
F.R.D. 211, 215 (D. Ariz. 1987) ("The potential for a chilling effect on research appears great.").

1 ¶¶ 143-150] (Three Boston first responder unions filed for injunctive relief against the Mandatory Vaccine Policy in the Massachusetts Superior Court, which was denied. They then appealed to a single justice of the Massachusetts Appeals Court and obtained a preliminary injunction, which was then appealed by Defendant City of Boston to the entire Massachusetts Appeals Court. Upon transferring the appeal to itself *sua sponte*, the Massachusetts Supreme Judicial Court overruled the single justice in the Massachusetts Appeals Court and vacated the preliminary injunction. However, Defendant City of Boston never reinstated the policy thereafter.). At no point was the Mandatory Vaccine Policy active. Plaintiff cannot assert an injury for a policy that was never enacted or enforced. Plaintiff attempts to change this allegation in his Opposition to the Defendant's Motion to Dismiss by stating that the Vaccine or Test Policy was also based on Defendant's advice. However, a plaintiff cannot introduce new allegations in an opposition to a motion to dismiss. To consider this newly asserted allegation "would deprive the defendants of clear notice of the allegations against them." Steele v. Turner Broadcasting Sys., Inc., 607 F. Supp. 2d 258, 263 (D. Mass. 2009).

### d) On information and belief

Lastly, the Court is unpersuaded that the allegations based "on information and belief" can remedy the defects in Plaintiff's Complaint. Courts across the country have found this type of allegation to be conclusory when it is not supported with sufficient facts. See, e.g., Hayduk v. Lanna, 775 F.2d 441, 444-45 (1st Cir. 1985) (noting "where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint"); In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 251 (3d Cir. 2012) (finding an allegation "on information and belief" to be inadequate since it was conclusory and noting the absence of any factual allegation supportive of a connection between Defendant's

alleged unlawful conduct and Plaintiff's claim); <u>Fields v. Palmdale Sch. Dist.</u>, 427 F.3d 1197, 1208-09 (9th Cir. 2005) (rejecting the plaintiffs' allegation made "on information and belief" and stating "[t]he allegation is entirely speculative and conclusory in nature. No facts are offered in support of the [plaintiffs'] theory"); <u>Plumbers' Loc. Union No. 690 Health Plan v. Sanofi, S.A.</u>, No. CV 15-956 (KM) (MAH), 2017 WL 1822277, at *10 (D.N.J. May 4, 2017) (granting defendant's motion to dismiss and noting that the plaintiff's allegations made "on information and belief" are insufficient and "fail to bridge the gap between conceivability and plausibility"); <u>Brown v. Nano Hearing Tech Opco, LLC</u>, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *4 (S.D. Cal. July 9, 2024) (granting defendant's motion to dismiss since plaintiff does not offer allegations made "on information and belief" with any factual support); <u>Heard v. Becton, Dickinson & Co.</u>, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (noting that the "<u>Twombly</u> plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant" and dismissing plaintiff's claim made "on information and belief" since the necessary facts of the claim were not within the defendant's sole possession).

To be clear, there are some situations where an allegation based "on information and belief" can survive a motion to dismiss. These situations include cases where the facts are only within control and possession of the defendant. <u>See Primerica Life Ins. Co. v. Bailey</u>, No. 20-CV-10743-ADB, 2021 WL 927462, at *3 (D. Mass. Mar. 11, 2021) (stating that a plaintiff is entitled to include allegations based on "information and belief" "(1) where the facts are peculiarly within the possession and control of the defendant, or (2) where the belief is based on factual information that makes the inference of culpability plausible.") (quoting <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010)); <u>see also Soo Park v. Thompson</u>, 851 F.3d 910,

928 (9th Cir. 2017).

However, this is not the case here as Plaintiff has access to the necessary facts that lend support to his claims. He personally submitted his religious accommodation request; he attended his non-compliance hearing; and he received all communications regarding his denial. There is no information that is exclusively in the possession or control of Defendant Ojikutu that would allow Plaintiff's claims to survive. Nor are the allegations based on any factual information that makes the inference of culpability plausible. As a result, this Court does not find that the Plaintiff has sufficiently established the causation element of standing to withstand Defendant Ojikutu's 12(b)(1) motion to dismiss.

**B.     12(b)(6)**

Even if Plaintiff had sufficiently proven all elements for standing—and this Court holds he has not—his claims would still be dismissed as they fail to meet the requirement of plausibility to withstand a 12(b)(6) challenge. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Sepúlveda-Villarini v. Dept. of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010) ("The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."). Courts do not presume the truth of conclusory statements or "bare assertions" of the law. Iqbal, 556 U.S. at 681.

This Court need not linger over Defendant's alternative 12(b)(6) arguments for dismissal. As the Court has already noted, Plaintiff has not alleged any facts to suggest Defendant Ojikutu was involved in any conduct related to the denial of his religious accommodation request. Nor was the Defendant involved with the decision to place Plaintiff on unpaid administrative leave

upon his noncompliance with the Vaccine or Test Policy.  Plaintiff simply makes conclusory statements as to Defendant Ojikutu's involvement, only noting that she had the authority to grant or deny his request and that she, along with the other Defendants, did so, causing him injury.  In other words, the same causality flaws that existed for standing also exist for plausibility.  See Fitch v. Fed. Hous. Fin. Agency, No. 18-CV-214JJM, 2021 WL 4901909, at *9 (D.R.I. Oct. 21, 2021), R. & R. adopted, No. CV 18-214-JJM-PAS, 2022 WL 159287 (D.R.I. Jan. 18, 2022) (concluding that a 12(b)(6) plausibility analysis was unnecessary since the court found the Article III allegations regarding standing to be conclusory).

Plaintiff attempts to fix any plausibility deficiencies by inserting "on information and belief."  However, as discussed above, those words inherently have no value when not supported with specific facts.  See Citizens United v. Schneiderman, 882 F.3d 374, 384-85 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.  Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.").  Without any specific allegations highlighting Defendant Ojikutu's involvement with the religious accommodation request process, Plaintiff has failed to meet the standard of plausibility required to endure a 12(b)(6) motion to dismiss.  See Doe v. Pawtucket Sch. Dept., 969 F.3d 1, 5 (1st Cir. 2020) (affirming dismissal of claims against defendants since plaintiff's "complaint contains many general allegations that are too conclusory and/or contingent to make out a viable claim" and includes broad statements without specifics).  Accordingly, the Court must grant Defendant's 12(b)(6) motion.

### C.    Qualified Immunity

Lastly, Defendant Ojikutu maintains that Browder's claims against her are barred by qualified immunity.  [Dkt. 24].  Specifically, she argues that she is entitled to qualified immunity because the conduct that Plaintiff challenges is discretionary and because Plaintiff has not alleged that his clearly established right was violated.  [Dkt. 24 at 9].  Plaintiff contests this, arguing that "forcing [him] to be vaccinated against his will" is a violation that "would have been clear to a reasonable official as long ago as 1904."  [Dkt. 25 at 20].  Additionally, Plaintiff argues that "suspicion-free testing of employee bodily fluids for medical or other purposes" is a violation that "would have been clear since at least 1989."  [Id.].  Plaintiff claims that his rights included the right to bodily integrity; the right to refuse medical treatment; and the right to refuse diagnostic testing of bodily fluids in an employer-employee relationship.

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine if this doctrine applies, courts must engage in a two-step inquiry. The Court must determine whether: (1) the official "violated a federal statutory or constitutional right, and [whether] (2) the unlawfulness of their conduct was 'clearly established at the time.'"  Eves v. LePage, 927 F.3d 575, 582-83 (1st Cir. 2019).  Regarding the second question, the Court must evaluate whether the law was "sufficiently clear" such that "every reasonable official would understand that what he is doing is unlawful."  Id. at 583 (internal citation and quotations omitted).

As noted above, Plaintiff fails to state viable constitutional claims against the Defendant. Defendant Ojikutu was not involved in the decisions that led to Browder's placement on unpaid

administrative leave, nor was she involved with the implementation of the Vaccine or Test Policy with which Browder was found to be in noncompliance.  Defendant Ojikutu's actions as pleaded in the Complaint do not give rise to any valid constitutional violations that caused Plaintiff's alleged injury.  As a result, Plaintiff has failed to plausibly allege the violation of a constitutional right.

Even if he did, Plaintiff has not alleged a clearly established right at the time of the alleged misconduct.  To be clear, this is not a vaccine mandate case.  As the Mandatory Vaccine Policy never went into effect, Plaintiff could have undergone regular testing.  Thus, the more accurate description of Plaintiff's right is the right to forego COVID-19 testing.  Neither the Supreme Court nor the First Circuit has ever clearly established the right to refuse regular testing during a pandemic in order to maintain employment.  Moreover, the Plaintiff does not point to any precedent that would have put the Defendant on notice that she was violating a constitutional right.  Accordingly, since neither prong of qualified immunity is met, this Court finds that Defendant Ojikutu is entitled to qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Ojikutu's Motion to Dismiss [Dkt. 24] is **GRANTED**.

SO ORDERED.

Dated:  August 15, 2025                                    /s/ Angel Kelley
                                                           Hon. Angel Kelley
                                                           United States District Judge

18