**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MICHAEL BROWDER,

Plaintiff,

v.

CITY OF BOSTON, ET. AL.,

Defendants.

Civil Action No. 1:24-CV-11588-AK

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' CITY OF BOSTON & TAMMY PUST'S MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff Michael Browder Jr. commenced this action against the City of Boston (the "City") and Tammy Pust, the City's Interim Director of Labor Relations, in her individual and official capacities (collectively, "Defendants"), along with other parties who are not the subject of this memorandum. [Dkt. 1]. Browder alleges that the City's COVID-19 Vaccine Verification or Required Testing policy ("Policy"), and the manner of its administration, violated his constitutional, statutory, and contractual rights. Defendants move to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6) [Dkt. 28] (the "Motion"), arguing that the complaint fails to state a plausible claim and that Pust is entitled to qualified immunity [Dkt. 29]. Browder opposes dismissal. [Dkt. 34]. For the reasons that follow, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The following recitation draws principally from Browder's complaint and, where noted, from Defendants' briefing. At the pleading stage, the Court accepts well-pleaded allegations as

true, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and construes them in the light most favorable to Browder, Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011).

**A. Factual Background**

Browder became a firefighter with the Boston Fire Department ("BFD") in 2007. He is a devout member of the Nation of Islam and alleges that, on religious grounds, biochemical vaccines and testing of bodily fluids are prohibited because they constitute seeking protection from affliction "other than God," which informs his refusal to vaccinate or submit to testing.

On August 12, 2021, the City implemented the Policy, under which first responders were required either to verify full vaccination or to submit a negative COVID-19 test result every seven days beginning October 4, 2021. Noncompliance could result in unpaid administrative leave. [Dkt. 29-1 at 3]. The Policy's stated purpose was "to minimize exposure to and transmission of the COVID-19 virus in City workplaces by providing occupational protection to all City employees and preventing exposure to members of the community we serve." [Id. at 1; Dkt. 1 at ¶ 76]. Medical exemptions relieved employees from vaccination but not from weekly testing, while religious exemptions applied only to vaccination verification. [Dkt. 29-1 at 5].

On September 27, 2021, Browder requested a religious exemption from both vaccination and weekly testing. He submitted a Religious Accommodation Request on October 7, 2021, citing Quranic verses and teachings of the Nation of Islam, and proposing alternatives including twice daily self-monitoring, pre-shift temperature checks, and enhanced personal protective equipment. [Dkt. 29-2]. Two weeks elapsed without a decision. On October 25, 2021, the City warned that noncompliance by the close of that business day would result in unpaid leave. Although not scheduled to work on October 26, Browder was placed on indefinite unpaid administrative leave on October 27 for noncompliance.

On October 28, 2021, Pust's office sent an Interactive Dialogue Questions form to clarify Browder's submission; the questionnaire did not seek his spiritual authorities or detailed religious tenets. Browder returned the form the same day. On October 29, 2021, the City issued a written denial of his exemption request. The denial stated that vaccination verification was voluntary and therefore did not require accommodation, and it concluded that exempting Browder from weekly testing would impose an undue hardship, given his close contact duties. Also on October 29, the Deputy Chief of Personnel at the BFD scheduled a noncompliance hearing for November 2 and informed Browder he faced discipline up to termination. Browder emailed Pust seeking paid leave or a termination notice and received no reply. The November 2 hearing was canceled with only Browder present; a reconvened hearing on November 4 affirmed that he would remain on unpaid leave unless he complied.

On November 17, 2021, Browder filed a union grievance with Boston Firefighters Local 718 International Association of Fire Fighters AFL-CIO ("Local 718"). The union declined to advance the grievance, and Browder withdrew it on December 1, 2021. On December 20, 2021, the City adopted a Mandatory Vaccine Policy for all employees. First responder unions obtained a preliminary injunction prohibiting enforcement on February 15, 2022, and that injunction was vacated by the Massachusetts Supreme Judicial Court on March 30, 2023. The City did not reinstate the mandate; while the injunction was in effect the City purported to revert to the original policy but ceased enforcing the testing requirement. The City rescinded the Policy on May 11, 2023.

On May 24, 2023, the City directed Browder to return to work by May 31 without back pay; he declined. A July 12, 2023 meeting to discuss his work status did not occur because Browder did not appear. On September 29, 2023, he was terminated for unauthorized absence.

### B. Procedural History

Browder filed this action on June 19, 2024, asserting multiple federal and state claims against the City, Pust in her individual and official capacities, Dr. Ojikutu in her individual and official capacities, Local 718, and John Soares. Against the City, his claims included substantive and procedural due process claims under 42 U.S.C. § 1983 (Counts I and IX), free exercise and equal protection claims under 42 U.S.C. § 1983 (Counts III and IV), federal and state statutory discrimination claims (Counts V, VI, and VII), an ADA claim (Count VIII), a Takings Clause claim (Count X), a 42 U.S.C. § 1985 conspiracy claim (Count XI), and a breach of contract claim (Count XIII). Against Pust, he asserted several Section 1983 and state law claims (Counts I–IV), a Takings Clause claim (Count X), and a § 1985 conspiracy claim (Count XI). Defendants moved to dismiss on October 16, 2024, and, with respect to Pust, asserted qualified immunity. Browder filed his opposition on November 6, 2024, and subsequently voluntarily dismissed several claims against these Defendants.[1]

## II. LEGAL STANDARD

A defendant may move under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (citation omitted). A court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor, but need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 678–79 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Legal conclusions and bare recitations of elements are not entitled to the assumption of truth. See García-Catalán v. United States, 734

[1] Browder voluntarily dismissed his state law disparate treatment claim under Mass. Gen. Laws ch. 151B § 4 (Count VI), his Takings Clause claim (Count X), and his Section 1985 conspiracy claim (Count XI). [Dkt. 34].

F.3d 100, 103 (1st Cir. 2013). The court separates factual allegations from legal conclusions, Back Beach Neighbors Comm. v. Town of Rockport, 535 F. Supp. 3d 57, 62 (D. Mass. 2021), and determines whether the facts permit a reasonable inference of liability; if so, the motion must be denied, Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011). In assessing plausibility, the court may consider documents incorporated by reference in the complaint and official public records. Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013).

## III. DISCUSSION

The Court addresses Browder's claims in sequence, then finishes with Pust's defense of qualified immunity.

### A. Counts I, II, and IX: Due Process

Browder asserts three due process claims: federal substantive due process under the Fourteenth Amendment (Count I); Massachusetts substantive due process under Mass. Gen. Laws ch. 12, § 11I (Count II); and federal procedural due process under the Fourteenth Amendment (Count IX). The Court addresses each claim in turn.

#### 1. Substantive Due Process under 42 U.S.C. § 1983 (Count I)

To state a substantive due process claim, a plaintiff must show that the government deprived him of a constitutionally protected "life, liberty, or property interest" and that the challenged government action either shocks the conscience, Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008), or is not rationally related to a legitimate governmental purpose, Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir. 2001). The Supreme Court has recognized a liberty interest in bodily integrity and in refusing unwanted medical treatment. See Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 278 (1990). That recognition does not displace controlling precedent requiring deferential review of ordinary public health measures that are reasonably related to

legitimate governmental objectives. See Jacobson v. Massachusetts, 197 U.S. 11 (1905); Washington v. Glucksberg, 521 U.S. 702, 728–29 (1997); cf. Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 300-01 (2022).

Accepting Browder's well pleaded allegations as true, he plausibly alleges that the Policy burdened a liberty interest by conditioning continued employment on either vaccination or regular testing and by placing him on indefinite unpaid leave for noncompliance. Those allegations suffice to invoke substantive due process protection at the pleading stage. The dispositive question is the proper standard of review and whether the Policy survives it.

The City adopted the Policy to reduce workplace transmission of a contagious disease, a plainly legitimate public health objective. The Policy afforded employees an alternative to vaccination rather than imposing a single involuntary medical procedure. Under Jacobson and its progeny, regulations of this character are governed by a deferential rational basis inquiry unless the challenged conduct shocks the conscience. Browder's complaint does not plausibly allege conscience shocking executive action or facts showing that the Policy was arbitrary or wholly unrelated to the stated public health goal. His sincere preference to avoid both vaccination and testing does not render the Policy irrational as a matter of law. See Collins, 244 F.3d at 250-51. Accordingly, this claim fails, Defendants' Motion with respect to Count I is **GRANTED**, and Browder's federal substantive due process claim is **DISMISSED**.

**2. Massachusetts Substantive Due Process (Count II)**

Browder contends that Pust violated the Massachusetts Declaration of Rights ("Declaration of Rights") by conditioning his continued employment on vaccination or weekly testing, thereby forcing him to choose between exercising a religiously grounded right to refuse medical intervention and retaining his tenured position. Pust moves to dismiss on the ground

that Browder has not alleged infringement of a fundamental right that would trigger heightened scrutiny and that, in any event, the Policy bears a rational relationship to the City's legitimate public health objectives. Browder responds that Massachusetts recognizes a constitutional liberty to decline medical treatment and that his allegations plausibly show coercion warranting heightened review at the pleadings stage.

Under Massachusetts law, the court asks first whether the challenged government action implicates a fundamental right or liberty interest; if it does, strict scrutiny applies, and if it does not the action is upheld so long as it is rationally related to a legitimate state interest. Kligler v. Att'y Gen., 198 N.E.3d 1229, 1248 (Mass. 2022); see Commonwealth v. Ellis, 708 N.E.2d 644, (Mass. 1999). The Supreme Judicial Court has recognized a constitutional and common law right to refuse medical treatment in appropriate circumstances. Norwood Hosp. v. Munoz, 564 N.E.2d 1017, 1021 (Mass. 1991) ("This court has recognized . . . that individuals have a common law right to determine for themselves whether to allow a physical invasion of their bodies."). The Declaration of Rights can, in some contexts, afford "broader protection . . . than the Federal Constitution." Commonwealth v. DiBenedetto, 203 N.E.3d 579, 592 (Mass. 2023).

Applying those principles, Browder alleges that Pust initiated an interactive dialogue process with him, then disengaged. Then Pust, or someone she may have directed, conditioned his continued employment on submitting to a medical regimen that his faith forbids, and Browder alleges that noncompliance exposed him to indefinite unpaid leave and eventual separation. Those allegations, if proven, could constitute a coercive interference with bodily integrity interests recognized under Massachusetts law. Whether the Declaration of Rights, as construed in Norwood Hospital, extends to the workplace measures at issue and whether the City's public health justifications withstand strict scrutiny are factual and legal questions not

amenable to resolution on a motion to dismiss. The Court notes, however, to ultimately hold Pust liable, Browder must prove facts showing that she personally participated in or authorized the challenged conduct rather than relying on generalized allegations of institutional action. Accepting the complaint's nonconclusory allegations as true and drawing reasonable inferences in Browder's favor, the Defendants' Motion is **DENIED** with respect to Count II, which survives dismissal at this stage.

**3. Procedural Due under 42 U.S.C. § 1983 (Count IX)**

Browder alleges that the City and Pust deprived him of procedural due process by placing him on indefinite unpaid administrative leave while his religious accommodation request remained pending, thereby taking a constitutionally protected property interest in continued public employment without providing an adequate pre-deprivation process. Defendants move to dismiss on the ground that Browder lacked a protected property interest and that, in any event, he received constitutionally adequate process. Browder responds that, as a tenured public employee, he had a due process protected property interest in continued employment, and that the City removed him without the notice and meaningful pre-deprivation hearing the Constitution requires.

Procedural due process violation requires: a protected liberty or property interest, state action depriving the plaintiff of that interest, and a failure to provide constitutionally adequate process. García-González v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014). Where state law creates a legitimate claim of entitlement to public employment, a property interest exists and the employee ordinarily must receive notice and an opportunity to respond appropriate to the circumstances before termination or other significant deprivation. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542–43, 546 (1985). Post-deprivation procedures may suffice only

where pre-deprivation process is impracticable or the state provides an adequate post-deprivation remedy. Parratt v. Taylor, 451 U.S. 527, 538-39 (1981).

Here, Browder alleges status as a tenured civil service firefighter, prompt placement on indefinite unpaid leave while his accommodation request remained unresolved, minimal advance notice, and only a brief, apparently cursory post-deprivation proceeding that did not permit meaningful review of the exemption denial. Those allegations, taken as true, suffice to show a plausible deprivation of a property interest without constitutionally adequate pre-deprivation process. Whether exigent public health circumstances justified the City's procedures and whether the City's actual notice and post-deprivation remedies were constitutionally adequate are factual questions not ripe for resolution on a Rule 12(b)(6) motion. Again, to ultimately hold Pust liable, Browder must prove facts showing her personal participation. Thus, the Defendants' Motion is **DENIED** as to Count IX, which survives dismissal.

**B. Free Exercise under the First Amendment (Count III)**

Browder alleges that the Policy, as administered, violated his rights under the Free Exercise Clause by imposing a substantial burden on his sincerely held religious belief that biomedical vaccines and testing are forbidden, and by singling out religious objections for disparate treatment.

To survive dismissal, Browder must plausibly allege that the Policy either is not neutral or not generally applicable, or that it was applied in a discriminatory manner that permits resort to strict scrutiny. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531–33 (1993); Emp. Div., Dept. of Hum. Res. of Or. v. Smith, 494 U.S. 872, 879 (1990). A facially neutral law that allows individualized exemptions may nonetheless fail general applicability and thus trigger strict scrutiny. See Fulton v. City of Philadelphia, 593 U.S. 522,

537-38 (2021). Government action that impermissibly probes the validity or centrality of religious beliefs also raises Free Exercise concerns. See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n, 584 U.S. 617, 638 (2018). The First Circuit recently held that allegations that a government policy granted medical but not religious exemptions, and that medical exemptions were routinely granted while religious exemptions were denied, may survive a motion to dismiss where the complaint pleads plausible facts of disparate administration. See Lowe v. Mills, 68 F.4th 706, 714 (1st Cir. 2023).

Applying these principles, Browder's allegations are sufficient to state a Free Exercise claim. The Policy is facially neutral and includes both medical and religious exemption procedures, but the complaint alleges that medical exemptions were routinely granted while religious exemptions like Browder's were denied, that disciplinary consequences fell disproportionately on religious objectors while other noncompliant employees avoided adverse sanctions, and that the administrative process required Browder to justify and document doctrinal points in a manner that discounted or disparaged his beliefs. Accepted as true, those allegations plausibly show selective enforcement and an impermissible inquiry into religious belief that distinguish this case from a garden variety one. The Court notes reliance on an official's post hoc publications or scholarly statements standing alone is insufficient to show discriminatory administration unless the complaint pleads facts tying those materials to the challenged decision. Browder's surviving allegations must therefore prove discriminatory administration by the City or by Pust rather than resting solely on scholarly statements made by others in different roles or at different times.

Accordingly, the Motion is **DENIED** as to Count III. Browder may pursue his Free Exercise claim against the City, but to obtain damages from Pust in her individual capacity,

Browder must later prove specific, nonconclusory facts showing Pust's direct involvement in or ratification of the allegedly discriminatory administration.

**C. Equal Protection under the Fourteenth Amendment (Count IV)**

Browder alleges that the Policy was enforced in a racially discriminatory manner and produced a disparate impact on Black employees. He contends that Defendants denied religious exemptions disproportionately to Black employees, disparaged objections rooted in medical mistrust associated with Black Americans, and singled him out for indefinite unpaid leave while other noncompliant employees faced no comparable sanction. Defendants counter that the Policy is facially neutral, that Browder's disparate treatment theory requires proof of discriminatory intent, and the disparate impact theory requires a statistically significant showing, and that the City's public health justification is an obvious nondiscriminatory explanation for the challenged outcomes.

An official action will not be held unconstitutional solely because it results in racially disproportionate impact; proof of racially discriminatory intent or purpose is required to show violation of the Equal Protection Clause. Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265–66 (1977), (discussing Washington v. Davis, 426 U.S. 229 (1976)). Disparate treatment claims require proof that the plaintiff was intentionally treated differently from similarly situated persons on account of a protected class characteristic like race. Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001). Disparate impact claims in the employment context require identification of a specific employment practice and a showing of significant statistical disparity before the employer may justify the practice as job related and consistent with business necessity. Ricci v. DeStefano, 557 U.S. 557, 577–79 (2009); see Jones v. City of Boston, 752 F.3d 38, 46 (1st Cir. 2014); 42 U.S.C. §

2000e-2(k)(1)(A)(i).

Applying those standards, Browder's complaint states a plausible equal protection claim. He alleges multiple exemption denials that disproportionately affected Black employees, and his isolated placement on indefinite unpaid leave after refusing both vaccination and testing. Those allegations permit a reasonable inference of discriminatory intent or at least a disparate impact that warrants factual development rather than dismissal at the pleading stage. This conclusion does not foreclose the City's obvious nondiscriminatory explanation, namely legitimate public health and workplace safety concerns, or employer defenses available under Ricci and Title VII. It only recognizes that, on a motion to dismiss, the complaint's specific allegations are sufficient to require further factual inquiry. The Motion is therefore **DENIED** as to Count IV.

**D. Title VII Religious Discrimination (Counts V)**

Browder alleges that the City discriminated on the basis of religion by refusing to accommodate his sincere Nation of Islam objections to vaccination and weekly testing, placing him on indefinite unpaid administrative leave, and rejecting proposed alternatives such as reassignment and enhanced personal protective equipment. Defendants argue that Browder has not pleaded a bona fide religious belief or that accommodation would impose an undue hardship.

To plead a prima facie claim for disparate treatment religious discrimination, Browder must allege: (1) "a bona fide religious practice [that] conflicts with an employment requirement"; and (2) that the conflict motivated an adverse employment action. Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 15 (1st Cir. 2024) (citation omitted). Once a plaintiff makes this showing, the burden shifts to the employer to demonstrate that it offered a reasonable accommodation or that accommodating the employee would have imposed an undue hardship on its operations. Id.

Browder has pleaded a sincerely held religious objection communicated through a Reasonable Accommodation Request, disciplinary consequences arising from noncompliance, and specific alternative accommodations the City declined. Those allegations satisfy the prima facie pleading elements and shift the burden to the City to justify denial of accommodation as an undue hardship. Whether reassignment was infeasible, testing accommodations were unworkable, or accommodation would have imposed a substantial burden are merits questions for summary judgment or trial, not for resolution on a Rule 12(b)(6) motion. Defendants' Motion is **DENIED** as to Count V, and discovery is appropriate to develop evidence concerning the sincerity of Browder's beliefs and whether accommodation would have imposed an undue hardship on the City.

**E. Title VII Race Discrimination (Count VII)**

Browder alleges that the City's enforcement and accommodation decisions produced a disparate racial effect and were implemented with discriminatory purpose, citing selective denial of religious exemptions that disproportionately affected Black employees and his own singular placement on indefinite unpaid leave. Defendants contend the Policy is facially neutral, Browder's allegations of racial animus are speculative and derivative of his religious claim, and the limited sample of disciplinary actions is insufficient to allege disparate impact.

Title VII disparate treatment claims require an allegation that the plaintiff was treated differently than similarly situated employees because of discriminatory intent. Barrington Cove Ltd. P'ship, 246 F.3d at 7. When a policy is facially neutral, a Title VII plaintiff may proceed by demonstrating that a neutral practice produced a disparate impact traceable to the employer and is not justified by legitimate business necessity. See 42 U.S.C. § 2000e-2(k)(1)(A)(i); Ricci, 557 U.S. at 577–78; Jones, 752 F.3d at 46.

Here, Browder pleads multiple exemption denials that disproportionately affected Black employees, allegedly disparaging characterizations tied to medical mistrust among Black Americans, and his isolated placement on indefinite unpaid leave. Read in the light most favorable to him, those allegations permit a plausible inference of discriminatory intent or at least a disparate impact that warrants factual development. The City's nondiscriminatory justification of workplace safety and public health remains a potent defense, but it is not dispositive on the pleadings. Defendants' Motion is **DENIED** as to Count VII, and discovery will determine whether statistical proof and job-related business necessity justifications resolve the competing theories.

**F. Americans with Disabilities Act (Count VIII)**

Browder alleges that the City's Policy subjected him to involuntary medical examinations and disability related inquiries by requiring weekly COVID-19 testing of unvaccinated employees as a condition of continued employment. Defendants move to dismiss principally on two grounds: (1) Browder failed to exhaust administrative remedies because his earlier charge referenced only religion and retaliation and not disability; and (2) the complaint does not allege that Browder is disabled (nor that he was regarded as disabled), so he cannot state a discrimination claim under the ADA. Defendants also contend that compelled testing, standing alone, does not convert unvaccinated status into a cognizable impairment under the ADA.

To state a claim under the ADA, a plaintiff must allege: (1) disability "within the meaning of the ADA; (2). . . ab[ility] to perform the essential functions of [the] job with or without [a reasonable] accommodation;" and (3) an adverse employment action because of the disability. López-López v. Robinson Sch., 958 F.3d 96, 104 (1st Cir. 2020) (quoting Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir. 2008)). A plaintiff must also exhaust

administrative remedies by filing a timely charge with the EEOC or an appropriate state agency, Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999), and the judicial complaint is generally limited to claims reasonably encompassed by that charge.

The complaint alleges no actual disability, no record of a disability, and no facts showing that Browder was regarded as disabled. It also does not allege that Browder requested an accommodation for an impairment. Compelled testing or unvaccinated status, standing alone, does not convert the plaintiff into a person with an ADA cognizable impairment. See Kosiba v. Cath. Health Sys. of Long Island, Inc., No. 23-6, 2024 WL 3024652, at *1 n.1 (2d Cir. June 17, 2024). Because the complaint fails to plead the ADA's basic statutory predicate of disability, the elements of an ADA discrimination claim are not met, and Defendants' Motion is **GRANTED** as to Count VIII. Browder's ADA claims including any challenge under 42 U.S.C. § 12112(d)(4) fail for lack of pleaded disability and are **DISMISSED** without prejudice to amendment only if Browder can plead nonconclusory facts establishing an actual or perceived disability and exhaustion of administrative remedies.

**G. Breach of Contract (Count XIII)**

Browder alleges that the City breached the 2017–2021 collective bargaining agreement ("CBA") by placing him on indefinite unpaid administrative leave while his religious exemption request remained pending, by abruptly ordering him back to work after nineteen months and then declaring him absent without leave so as to deprive him of civil service appeal rights, and by refusing to advance his grievance through the CBA grievance process—conduct that Browder asserts violated the CBA's just cause, nondiscrimination, and good faith dealings terms and caused contract damages. Defendants move to dismiss the contract claim as preempted by the exclusivity provisions of Mass. Gen. Laws ch. 151B § 9 on the ground that the alleged breaches

arise from the same facts as Browder's employment discrimination claims.

A breach of contract claim under Massachusetts law requires a plaintiff to show: (1) there was an agreement between him and the defendant; (2) the plaintiff was "ready, willing, and able" to perform his end of the contract; (3) the defendant committed a breach of the contract; and (4) the plaintiff suffered harm as a result. Guldseth v. Fam. Med. Assocs. LLC, 45 F.4th 526, 534 (1st Cir. 2022) (quoting Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016)).

The complaint identifies the operative collective bargaining agreement, cites specific contractual protections including just cause, grievance and appeal procedures, and the covenant of good faith and fair dealing, and alleges particular acts by the City: placement on indefinite unpaid leave while an exemption request was pending and an abrupt return-to-work order after nineteen months followed by a declaration of unauthorized absence. Those allegations, if proven, plausibly show breaches of contractual obligations distinct from statutory discrimination remedies. Whether the alleged breaches are simply a repackaging of Chapter 151B claims, whether the City acted in bad faith, and whether contractual remedies remain available are fact intensive issues for discovery. Defendants' Motion is **DENIED** as to Count XIII, and the contract claim survives to permit discovery into the CBA terms, the specific acts alleged to have breached those terms, causation, and whether the claim is preempted or barred by the Chapter 151B remedial scheme.

**H. Qualified Immunity**

To begin, "courts must maintain a balance between a defendant-official's interest in the early dismissal of claims as to which [s]he is immune, and a plaintiff's interest in benefiting from the favorable standards afforded to him on a motion to dismiss . . ." Jakuttis v. Town of Dracut, Massachusetts, 656 F. Supp. 3d 302, 318 (D. Mass. 2023). Government officials sued in their

individual capacities are immune from damages liability unless the plaintiff plausibly alleges both that: (1) an official violated a federal constitutional or statutory right; and (2) that the right was clearly established at the time of the challenged conduct so that a reasonable official would have understood that her conduct was unlawful. Eves v. LePage, 927 F.3d 575, 582–583 (1st Cir. 2019); see Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court evaluates those prongs sequentially and with attention both to the particularity of the alleged facts and to the legal context in which Pust acted.

Applying the first prong, Browder has pleaded plausible allegations that Pust personally participated in the interactive exemption process and materially contributed to the denial and the discipline that followed. He alleges that Pust's office supplied the interactive dialogue questionnaire, that she corresponded with him directly about his request, and that she was the operative City official handling exemption communications. Accepting those allegations as true at the pleading stage, Browder has alleged plausible Free Exercise and due process violations.

The second prong yields a more nuanced result. The Free Exercise principles forbidding selective enforcement and impermissible inquiry into the content or centrality of religious belief were clearly established before the events alleged, as reflected in Lukumi, 508 U.S. 520, and subsequently refined in Fulton, 593 U.S. 522. A reasonable official would have known that treating religious exemptions differently from comparable secular exemptions or demanding doctrinal proof could violate the Free Exercise Clause. The procedural due process right of tenured public employees to constitutionally adequate notice and an opportunity to be heard prior to a significant deprivation was likewise clearly established by Loudermill, 470 U.S. 532, and related precedent. By contrast, the proposition that an employee has a clearly established constitutional right to refuse routine workplace testing or to invalidate a neutral vaccine or test

regimen as a categorical matter was not clearly established at the time and lacks controlling Supreme Court or First Circuit precedent, Jacobson, 197 U.S. 11, and related public health cases support deferential review of reasonable pandemic measures.

Accordingly, qualified immunity is **DENIED** as to claims based on an impermissible Free Exercise violation and as to the surviving due process claims because Browder has plausibly alleged Pust's direct involvement, and the governing law was clearly established. Qualified immunity is **GRANTED**, however, with respect to any claim premised on a categorical entitlement to refuse routine workplace testing or to nullify a neutral vaccine-or-test mandate, because the law has not clearly established such a sweeping right. See Jacobson, 197 U.S. 11.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Dkt. 28] is **GRANTED IN PART** and **DENIED IN PART** as follows:

- **GRANTED** as to Count I (federal substantive due process under 42 U.S.C. § 1983), which is **DISMISSED**.
- **DENIED** as to Count II (Massachusetts substantive due process under the Declaration of Rights), which survives as to Pust to the extent the complaint plausibly alleges her direct involvement.
- **DENIED** as to Count III (free exercise under the First Amendment), which survives against the City and to Pust to the extent Browder plausibly alleges Pust's direct involvement.
- **DENIED** as to Count IV (equal protection under 42 U.S.C. § 1983).
- **DENIED** as to Count V (Title VII failure to accommodate and religious

discrimination).

- **VOLUNTARILY DISMISSED** as to Count VI (state law disparate treatment and religious discrimination).
- **DENIED** as to Count VII (Title VII race discrimination).
- **GRANTED** as to Count VIII (Americans with Disabilities Act), which is **DISMISSED**.
- **DENIED** as to Count IX (procedural due process under 42 U.S.C. § 1983), which survives against the City and to Pust to the extent Browder plausibly alleges Pust's direct involvement.
- **VOLUNTARILY DISMISSED** as to Count X (Takings Clause).
- **VOLUNTARILY DISMISSED** as to Count XI (conspiracy to deprive of equal protection under 42 U.S.C. § 1985).
- **DENIED** as to Count XIII (Breach of Contract).
- As to Pust's assertion of qualified immunity, it is **DENIED** with respect to claims alleging Pust's direct involvement in discriminatory treatment of Browder's Free Exercise rights or in denial of constitutionally required due process. Qualified immunity is **GRANTED**, however, for any claim premised on a categorical constitutional entitlement to refuse routine workplace testing or to nullify a neutral vaccine-or-test mandate.

**SO ORDERED.**

Dated: October 1, 2025

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge