## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BROWDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Civil Action No. 1:24-CV-11588-AK |
| v. ) | |
| ) | |
| CITY OF BOSTON,  ET. AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER ON DEFENDANT BOSTON FIREFIGHTERS LOCAL 718, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO's MTD

**ANGEL KELLEY, D.J.**

Plaintiff Michael Browder sued Defendant Boston Firefighters Local 718, International Association of Fire Fighters, AFL-CIO ("Local 718"), alleging disparate treatment religious discrimination under 42 U.S.C. § 2000e-2 (Count V), disparate treatment religious discrimination under Mass. Gen. Laws ch. 151B, § 4 (Count VI), conspiracy to deprive equal protection under 42 U.S.C. § 1985 (Count XI), and breach of the duty of fair representation (Count XII).  Browder also sued Tammy Pust, the City of Boston (the "City"), Bisola Ojikutu ("Dr. Ojikutu"), and then Local 718 president, John Soares.  Local 718 moves to dismiss all claims against it, arguing that Browder has failed to state a claim upon which relief can be granted (the "Motion").  [Dkt. 27].  Browder voluntarily dismissed Count XI, the § 1985 conspiracy claim, against all defendants but opposes Local 718's Motion, arguing that he has plausibly alleged entitlement to relief.  [Dkt. 38].  For the following reasons, Local 718's Motion is **DENIED**.

1

## I.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint.

### A.  General Facts

Browder is a member of the Nation of Islam and alleges that, consistent with his faith, he believes biochemical tests, vaccines, and other countermeasures against contagious disease are sinful because they substitute for protection from God.  He joined the Boston Fire Department ("BFD") in 2007.

For approximately 19 months during the COVID-19 pandemic, Browder completed the COVID-19 Employee Mandatory Self-Monitoring Checklist.  On August 12, 2021, the City instituted the Vaccine Verification or Required Testing for COVID-19 policy (the "Policy").  On September 27, 2021, Browder submitted a request to the City's Office of Human Resources for a religious exemption from both vaccination and testing requirements, asserting sincerely held religious beliefs as the basis for the request.  On October 7, 2021, Browder requested an update on his religious exemption request, at which point the City asked him to fill out a religious accommodation form, which he did.  Browder alleges he received no timely update.  On October 25, 2021, Browder was informed that he was not in compliance and would be placed on unpaid administrative leave if he did not come into compliance.  On October 27, 2021 he was placed on unpaid administrative leave.

On October 28–29, 2021, Browder engaged in the City's interactive accommodation process and was later notified that his requested accommodation was denied: the accommodation to vaccination was denied on the ground the vaccine was not mandatory, and the accommodation to testing was denied on undue-hardship grounds.  On December 20, 2021, Browder alleges the City adopted a Mandatory Vaccine Policy based on medical advice from Dr. Ojikutu.  That

policy never took effect because Local 718 and two police unions sought injunctive relief. The

Policy was rescinded on May 11, 2023. The City requested Browder's return to work in May

2023, but he did not return to work as ordered to report in July 2023. Browder alleges

constructive discharge from indefinite unpaid leave. The City notified him on September 29,

2023 that he was terminated because of his unauthorized absence commencing July 12, 2023.

### B.  Local 718: Organization, CBA, and Membership

Local 718 is the sole and exclusive bargaining agent for uniformed BFD employees other

than the Chief of Department and Deputy and District Chiefs for purposes of collective

bargaining on wages, hours, productivity and performance standards, and other terms and

conditions of employment. The 2017–2021 collective-bargaining agreement (CBA) provides

that covered employees "shall not be disciplined nor discharged except for just cause" and that

Boston "agrees not to discharge or discriminate in any way against employees covered by this

Agreement . . . on the basis of race, religion, color, [or] creed." The CBA establishes a labor

grievance procedure pursuant to Mass. Gen. Laws ch. 150E, §§ 5, 8–9. While employed by

BFD, Browder was a mandatory, dues-paying member of Local 718.

### C.  Local 718's Response to Browder's Grievance and Related Conduct

On October 31, 2021, after Browder was placed on unpaid administrative leave, an

attorney retained by Local 718 informed the Boston Office of Labor Relations that Local 718

would join in seeking restoration of Browder's lost time, and requested that Browder be given a

reasonable period to consult counsel and evaluate options before the City determined his

compliance and pay status. On November 17, 2021, Browder filed a labor grievance with Local

718. Local 718 and/or BFD forwarded the grievance to Boston's Office of Labor Relations and a

hearing was scheduled for December 3, 2021. On November 23, 2021, BFD's deputy chief of

personnel emailed Browder, Local 718 president John Soares, and Local 718 vice-president John Sarro regarding the grievance.  Two minutes later, Soares replied to all, "OMG!!!! This dude is a loose cannon."  Ten minutes after Soares' response, Sarro emailed Browder that he was "on his own" and that the "Union is not filing or advancing this grievance" on his behalf.

On December 1, 2021, Browder withdrew his grievance and cancelled the scheduled hearing, allegedly because Local 718 refused to advance the grievance and because Tammy Pust, the official who had denied his religious exemption, was the Director of the Office of Labor Relations.  In writing, Browder stated he had never before been suspended or disciplined in his years of City employment, described being suspended without pay and ostracized since October 27, 2021, and expressed that he had "zero confidence that I will be treated fair and just by the City, the Department, or the Union," after which he withdrew the grievance and informed the Union of the withdrawal.

### D.  Local 718's Actions Regarding the Mandatory Vaccine Policy and Comparative Treatment

Local 718 publicly opposed the Policy.  As Union President, Soares condemned the Policy as "a major change in working conditions and violation of an individual's human rights." On December 23, 2021, Local 718 and two Boston police unions convened a joint emergency meeting to discuss the proposed Mandatory Vaccine Policy.  Browder's retired firefighter father attended that meeting, spoke about Local 718's lack of support for Browder, and, allegedly, Soares shouted at him in a manner that a witness described as intended to "intimidate and[/]or shut down the gentleman's statement," allegedly including a comment to the effect of "your idiot f**king son."  Soares had worked with Browder's father for more than two decades prior and was or should have been aware that Browder's family are members of the Nation of Islam.

Local 718 filed an action alongside the police unions for injunctive relief against the Mandatory Vaccine Policy in Massachusetts Superior Court on December 31, 2021. The Superior Court declined to grant the injunction, but the unions appealed to the Massachusetts Appeals Court and the injunction was granted on February 15, 2022. This injunction barred the City from placing unvaccinated employees on unpaid administrative leave for failure to comply with the Mandatory Vaccine Policy. While the preliminary injunction was in effect, the City ceased enforcing testing requirements for unvaccinated employees. Written statements from other firefighters describe continuing work without submitting negative tests and without punitive action. A Boston spokesman represented that no City employee was "held out" solely for refusing vaccination and only three employees were placed on unpaid administrative leave for refusing both vaccination and testing, of whom Browder was the only firefighter and at least two employees were Black Americans. On March 30, 2023, the Massachusetts Supreme Judicial Court vacated the injunction, but the City never reinstated the Mandatory Vaccine Policy.

### E. Procedural Background

Browder filed an EEOC charge on March 27, 2024 and received a right-to-sue notice on June 17, 2024. He brought this suit on June 19, 2024, alleging four claims against the Union: disparate treatment religious discrimination pursuant to 42 U.S.C. § 2000e-2 (Count V), disparate treatment religious discrimination pursuant to Mass. G.L. ch. 151B, § 4 (Count VI), conspiracy to deprive of equal protection of laws under 42 U.S.C. § 1985 (Count XI), and breach of duty of fair representation (Count XII). Browder subsequently voluntarily dismissed Count XI. [Dkt. 38]. Still, Browder argues that Local 718 subjected him to disparate treatment based on his religion, and its refusal to advance his grievance was a breach of its duty of fair representation to him. Local 718 moved to dismiss under Rule 12(b)(6) on October 16, 2024

[Dkt. 27][1], and Browder filed an opposition on November 25, 2024.  [Dkt. 38].

## II.    LEGAL STANDARD

A defendant may move under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft, 556 U.S. at 678 (citation omitted).  A court must accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor, but need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Id. at 678–79 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Legal conclusions and bare recitations of elements are not entitled to the assumption of truth.  See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  The court separates factual allegations from legal conclusions, Back Beach Neighbors Comm. v. Town of Rockport, 535 F. Supp. 3d 57, 62 (D. Mass. 2021), and determines whether the facts permit a reasonable inference of liability; if so, the motion must be denied, Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).  In assessing plausibility, the court may consider documents incorporated by reference in the complaint and official public records.  Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013).

## III.    DISCUSSION

The Court addresses Browder's claims in sequence.

---

[1] Defendant Soares joined Local 718's Motion in his capacity as union president [Dkt. 27] and separately moved to dismiss all claims asserted against him in his individual capacity [Dkt. 62].  Browder initially sued Soares on Counts V (Title VII), VI (Mass. Gen. Laws ch. 151B), XIV (MCRA), and XV (tortious interference), but he voluntarily dismissed the federal claims and sought dismissal of the remaining state law counts to refile in state court [Dkt. 74]. The Court granted voluntary dismissal of the state law claims without prejudice and terminated Soares from the case [Dkt. 88].  Local 718 remains the sole defendant for purposes of this memorandum and motion practice.

## A.  Disparate Treatment Religious Discrimination Pursuant To 42 U.S.C. § 2000e-2 (Count V)

Browder alleges that, as a member of the Nation of Islam, his sincerely held religious beliefs forbid both COVID-19 vaccination and biochemical testing, that those beliefs conflicted with the City's Policy and the later Mandatory Vaccine Policy, and that his refusal to vaccinate or submit to testing resulted in indefinite unpaid administrative leave and ultimate separation.  He further alleges that Local 718 disparaged him, refused to advance his grievance after a hearing was scheduled, and publicly and selectively supported other members' objections: conduct he contends evinces discriminatory animus and meaningfully induced or contributed to the City's adverse employment decisions against him.  Local 718 moves to dismiss Count V on the ground that Browder fails to identify similarly situated comparators or particularized facts showing differential treatment, that Local 718's litigation and public opposition to vaccine mandates demonstrate nondiscriminatory, membership-wide advocacy, and that discipline and termination were decisions made by the City, not it.  Browder opposes dismissal, relying on the contemporaneous union communications (the October–November exchange, the Sarro email, and the December 23 meeting incident) and Local 718's explicit refusal to advance his grievance as factual bases permitting an inference that it acted with hostility toward his particular religious claim and that its conduct contributed to the City's treatment of him.  In reply, Local 718 emphasizes that it advanced Browder's grievance and a hearing was scheduled, but that Browder voluntarily withdrew the grievance, and it stresses that its court challenge was a membership-wide effort that would have addressed testing concerns for all members — facts that, Local 718 argues, undercut any inference that isolated union officer comments caused discriminatory employment action.

To establish a prima facie case of disparate treatment discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) the employer took an adverse employment action against them; and (4) some evidence of a causal link between their protected status and the adverse employment action. Evans v. Staples, Inc., 375 F. Supp. 3d 117, 123 (D. Mass. 2019) (citing Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011)). "The burden for establishing a prima facie discrimination case is low, variously described as easily made and not onerous." (internal quotations and citations omitted) Ortiz v. Fed. Bureau of Prisons, 290 F. Supp. 3d 96, 104 (D. Mass. 2017).

Browder has plausibly pleaded the necessary elements. He is a member of a protected class, as a Black person, under Title VII. He was qualified for his position, having worked at BFD for over a dozen years. He alleges adverse employment actions, including being placed on indefinite unpaid leave and then, ultimately, his termination. He also alleges facts that could be read to give rise to an inference of discriminatory animus by Local 718 leadership and a causal connection with an adverse employment action. In particular, what is notable is the sequence of events, starting with Local 718's counsel initially seeking interim relief, the "loose cannon" email and Sarro's "on his own" message, coupled with the Union's refusal to advance the grievance, the December 23 meeting incident involving Local 718 leadership and Browder's father, and allegations of selective advocacy. Those allegations, taken together, permit a reasonable inference that Local 718 may have viewed Browder's identity as a Black Muslim and his particular religious refusal unfavorably, and that Local 718 may have communicated this sentiment to City actors in the same timeframe as the adverse employment actions. Local 718's insistence that the City, and not it, ultimately made discipline and termination decisions is a substantive defense relevant to the merits, but it does not negate plausibility at the pleading stage

when the Complaint alleges that Local 718 communicated its refusal to the City and abandoned a scheduled grievance hearing, facts from which a reasonable inference of causal contribution may be drawn.  Construing the allegations in Browder's favor, the Court concludes Count V states a plausible claim against Local 718 and **DENIES** the Motion as to Count V.

**B.  Massachusetts Disparate Treatment Religious Discrimination Pursuant to Mass. Gen. Laws ch. 151B, § 4 (Count VI)**

Browder alleges a state law analogue of his federal claim: that Local 718, together with the City and Soares, discriminated against him on the basis of religious creed by declining to advance his grievance, by making disparaging statements about him, and by selectively supporting other members' objections to City policies: conduct he contends proximately caused his unpaid leave and ultimate separation.  Local 718 moves to dismiss Count VI for failure to plead the requisite causal nexus between its conduct and his termination (which the Union attributes to Browder's unauthorized absence), for failing to identify similarly situated comparators, and its membership-wide litigation demonstrates nondiscriminatory representation rather than targeted hostility.  Browder opposes, arguing the Complaint pleads contemporaneous, particularized facts showing union hostility, that Local 718's subsequent withdrawal of representational support foreclosed his contractual grievance remedy under the CBA, and that comparative evidence of selective non-enforcement permits an inference that Local 718's conduct meaningfully contributed to the City's adverse actions.  In reply, Local 718 reiterates that its injunctive litigation represented all members indiscriminately and that Browder never pleads he asked the Union to challenge the testing alternative specifically, so there are no pleaded facts showing Local 718's conduct proximately caused his eventual absence-based separation.

A Chapter 151B claim requires the plaintiff to plead: (1) membership in a protected class;

(2) harm; (3) discriminatory animus; and (3) causation.  Llorens v. LexShares, Inc., 759 F. Supp.
3d 181, 187 (D. Mass. 2024) (quoting Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky &
Popeo, P.C., 474 Mass. 382, 396, 50 N.E.3d 778, 793 (2016)).  If a prima facie case is made, the
defendant may articulate a legitimate, nondiscriminatory reason for the employment decision and
the plaintiff then must allege facts showing that the proffered reason is pretextual and that
discriminatory animus motivated the action.  Verdrager, 474 Mass. at 397.  Third parties may
also be held liable.  Id. at 396.

 Browder alleges the statutory predicates: his protected status as a Black Muslim man,
adverse employment actions and the harms that resulted, and factual allegations supporting an
inference of discriminatory animus and proximate cause, including details about Union
leadership's communications with City officials, the scheduling and cancellation of the grievance
hearing, Soares' statements, and comparative treatment of other members.  Local 718's
arguments that the City exercised final disciplinary authority and that it litigated on behalf of
members indiscriminately bear on causation and on the ultimate merits, but they do not defeat
plausibility at the pleading stage when the Complaint alleges that Local 718 affirmatively
communicated its refusal to pursue the grievance to City actors contemporaneous with adverse
employment actions.  Viewing the allegations holistically and drawing reasonable inferences in
Browder's favor, the Court finds Count VI plausibly pleads discriminatory motive and proximate
causation, and therefore **DENIES** the Motion as to Count VI.

### C.  Conspiracy to Deprive of Equal Protection Under 42 U.S.C. § 1985 (Count XI)

 Browder originally alleged that all defendants conspired to deprive Black and/or City
employees of the equal protection of the laws in the context of pandemic-era public health
measures.  Browder has since voluntarily dismissed Count XI.  [Dkt. 38].  Because Browder has

elected to dismiss the § 1985 claim, it is **DISMISSED**.  See Fed. R. Civ. P. 41(a)(1)(A)(i).

### D.  Breach of the Duty of Fair Representation (Count XII)

Browder alleges that he filed a labor grievance pursuant to the CBA and that Local 718 refused to advance his grievance in bad faith and in an arbitrary manner.  He attributes Local 718's refusal to religious discrimination, and personal hostility by Soares in particular, and alleges Local 718's actions (or lack thereof) breached its statutory and common law duty of fair representation, causing him injury.  He alleges that the refusal caused him damage by foreclosing contractual grievance relief and contributing to his adverse employment outcome.  Local 718 contends that refusal to pursue a grievance is a discretionary prosecutorial decision entitled to wide deference, that Browder failed to exhaust contractual and administrative remedies (including arbitration and review before the Massachusetts Department of Labor Relations), and that the Complaint lacks particularized facts showing conduct so irrational, discriminatory, or in bad faith as to satisfy the high standard for arbitrariness.  Browder argues the Complaint pleads particularized indicia of arbitrariness and bad faith, and that the CBA's grant of exclusive procedural control to Local 718 rendered its withdrawal effectively dispositive.  Local 718 replies that it exercised lawful discretion, forwarded the grievance to the final contractual step, remained in communication with Browder, and that two ambiguous, stray comments (one of which post-dates Browder's withdrawal) cannot plausibly establish the kind of irrationality, invidious discrimination, or bad faith necessary to sustain this claim.

An exclusive bargaining representative owes its members a duty of fair representation. Vaca v. Sipes, 386 U.S. 171, 177 (1967).  A duty of fair representation claim requires a unionized employee to plead three elements: (1) the union owed a duty to represent the employee as the exclusive bargaining representative; (2) the union's conduct was arbitrary, discriminatory,

11

or in bad faith; and (3) the union's breach proximately caused the employee's damages.  Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570 (1976).  Courts afford unions broad discretion in handling grievances and disturb only those decisions that fall outside a wide range of reasonableness, evidence invidious discrimination, or manifest bad faith.  See Graham v. Quincy Food Serv. Emps. Ass'n, 407 Mass. 601, 606, 555 N.E.2d 543 (1990); Alston v. Int'l Ass'n of Firefighters, Loc. 950, 998 F.3d 11, 26 (1st Cir. 2021).

Here, Browder has pleaded the threshold elements.  He alleges that Local 718 was his exclusive bargaining representative under the CBA, that he filed a grievance which was scheduled for hearing, and that the Union then informed all parties it would not advance that grievance.  He also alleges particularized facts bearing on arbitrariness and discriminatory motive.  Between October and December 2021, Local 718's counsel initially sought interim relief, then union officers disparaged Browder as a "loose cannon," told him he was "on his own," and Soares publicly insulted him at a joint emergency meeting.  Browder further alleges that Local 718's general opposition to vaccine mandates did not extend to his dual objection to both vaccination and testing and that he expressly withdrew his grievance for lack of confidence in the Union's fairness.  Taken together, these contemporaneous allegations permit a reasonable inference that Local 718's refusal to pursue his grievance was arbitrary or motivated by hostility toward his religious beliefs and that this refusal foreclosed his contractual remedy, contributing to his unpaid leave and separation.  At the Rule 12(b)(6) stage, these factual allegations are sufficient to state a plausible duty of fair representation claim.  Local 718's arguments about broad prosecutorial discretion, alleged failure to exhaust other remedies, and the City's ultimate disciplinary authority raise merits issues inappropriate for resolution on a motion to dismiss.  Accordingly, Count XII survives and the Motion is **DENIED** as to this claim.

**IV.    CONCLUSION**

For the foregoing reasons, Local 718's motion to dismiss [Dkt. 27] is **GRANTED IN PART** and

**DENIED IN PART** as follows:

- **DENIED** as to Count V (Title VII disparate treatment religious discrimination).

- **DENIED** as to Count VI (Massachusetts disparate treatment religious
  discrimination).

- **VOLUNTARILY DISMISSED WITHOUT PREJUDICE** as to Count XI
  (conspiracy to deprive equal protection).

- **DENIED** as to Count XII (breach of the duty of fair representation).

    **SO ORDERED.**

Dated: October 1, 2025                              /s/ Angel Kelley
                                                    Hon. Angel Kelley
                                                    United States District Judge

13